# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re: FLORENCE TOMASI; WILLIAM TOMASI

Debtors

BAP No. CC-12-1401-KiTaD

-----------------------------------

FLORENCE TOMASI; WILLIAM TOMASI

Appellants

v.

SAVANNAH N. DENICE TRUST

Appellee

Bankr. No. 10-16174-MT
Adv. No. 10-1446-MT
Chapter 7

# FILED

AUG 15 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## JUDGMENT

ON APPEAL from the United States Bankruptcy Court for California Central - San Fernando.

THIS CAUSE came on to be heard on the record from the above court.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this Panel that the judgment of the Bankruptcy Court is AFFIRMED.

### FOR THE PANEL,

Susan M Spraul
Clerk of Court
By: Patti Ippolito, Deputy Clerk

BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT
A True Copy
Attest:

Susan M. Spraul, Clerk
Patti Ippolito
by Deputy Clerk            9/6/13

Case 12-1401   Document 32   Filed 08/15/2013   Page 1 of 29   FILED (2 of 31)

AUG 15 2013

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-12-1401-KiTaD |
| FLORENCE TOMASI and WILLIAM S. TOMASI, | Bk. No.   10-16174-MT |
| Debtors. | Adv. No.   10-1446-MT |
| WILLIAM S. TOMASI, | |
| Appellant, | |
| v. | M E M O R A N D U M[1] |
| THE SAVANNAH N. DENOCE TRUST, | |
| Appellee. | |

Argued and Submitted on May 15, 2013
at Pasadena, California

Filed - August 15, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

Appearances:   Kevin Hunter Park, Esq. of Gray Duffy LLP argued
for appellant, William S. Tomasi; Allan Herzlich,
Esq. of Herzlich & Blum, LLP argued for appellee,
The Savannah N. Denoce Trust.

Before: KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

1    Appellant, debtor William S. Tomasi, Esq. ("Tomasi"), appeals

2  a judgment from the bankruptcy court determining that the debt of

3  appellee, the Savannah N. Denoce Trust ("Trust"), was excepted

4  from discharge under 11 U.S.C. § 523(a)(4)[2] for Tomasi's

5  defalcation while acting in a fiduciary capacity.  We AFFIRM.

6                **I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

7  **A.   Prepetition events**

8    We begin by noting that Tomasi's record on appeal is woefully

9  inadequate.  He failed to include nearly all of the documents

10  underlying the state court proceedings upon which he makes a

11  majority of his arguments.  He also failed to include many of the

12  documents he filed in the bankruptcy court.  An appellant who

13  attacks the trial court's findings or conclusions on appeal must

14  include in the record all the evidence on which the court may have

15  based its findings or conclusions.  See Fed. R. App. P. 10(b);

16  Bourke v. City of San Diego, 1997 WL 75571, at *1 (9th Cir.

17  Feb. 17, 1997)(citing Thomas v. Computax Corp., 631 F.2d 139, 141

18  (9th Cir. 1980)).  Based on his inadequate record, we are entitled

19  to presume that any missing portions are not helpful to his

20  position.  Gionis v. Wayne (In re Gionis), 170 B.R. 675, 680-81

21  (9th Cir. BAP 1994).  We are also entitled to summarily affirm or

22  dismiss his appeal.  Cmty. Commerce Bank v. O'Brien

23  (In re O'Brien), 312 F.3d 1135, 1137 (9th Cir. 2002).

24  Nonetheless, because of the gravity of the issue, we exercise our

25  discretion to review the bankruptcy court's judgment based on what

26  _____

27    [2] Unless specified otherwise, all chapter, code and rule
references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and
the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The
28  Federal Rules of Civil Procedure are referred to as "Civil Rules."

1  little record Tomasi has provided and the partial record submitted

2  by the Trust.

3      The Trust was created by Douglas J. Denoce ("Denoce") as an

4  irrevocable trust in 1999, for the sole benefit of his minor

5  daughter, Savannah.  In December 2000, then-trustee William J.

6  Houser, Esq., acquired a condominium in Simi Valley, California

7  ("Simi Valley Property") as a Trust investment.  The Simi Valley

8  Property was acquired from a former client of Denoce's at a

9  sheriff's sale for $5,000.

10     Denoce and Tomasi met in 2003, at which time Tomasi was

11 retained to defend Denoce against criminal charges, including

12 driving under the influence.  The men also entered into a business

13 relationship in which Denoce, a California attorney disbarred in

14 1997, would perform legal work for Tomasi in exchange for

15 compensation.

16     In 2004, Denoce asked Tomasi to serve as trustee of the Trust

17 and Tomasi accepted.  At that time, the Trust assets consisted of

18 two pieces of real property: the Simi Valley Property and a

19 property located in Westlake Village.[3]  Both properties were free

20 of any encumbrances or mortgages.  During this time, Tomasi sold

21

22     [3] Tomasi contends the Simi Valley Property was never part of
the Trust.  This contention contradicts the findings by the state
23 court, the California Court of Appeal and the bankruptcy court
that it was Trust res when Tomasi took over as trustee.  Tomasi
24 has not provided any evidence in the record to refute this
finding, including what he says proves his contention — copies of
25 page 1 of the Trust and the sheriff's deed to the Simi Valley
Property, which Tomasi claims shows that it was taken in the name
26 of Mr. Houser and not in the name of the Trust.  Tomasi has not
met his burden as appellant to provide an adequate record to show
27 that this finding was clearly erroneous.  Kritt v. Kritt, 190 B.R.
382, 387 (9th Cir. BAP 1995).  Therefore, we conclude that the
28 Simi Valley Property was part of the Trust at all pertinent times,
and we reject Tomasi's arguments to the contrary.

-3-

1  his Porsche to Denoce for $50,000.  Denoce paid Tomasi a $24,000

2  down payment towards the total purchase price.  The Trust alleged

3  that after agreeing to sell the Porsche to Denoce, Tomasi

4  quitclaimed the Simi Valley Property to himself to provide

5  collateral for the payment of the balance of the purchase price

6  for the Porsche and for a $60,000 loan he used to pay off personal

7  credit card debt.  The quitclaim deed, executed on October 21 and

8  recorded on October 22, 2004, identifies the Trust as "Grantor"

9  and Tomasi as "Grantee."

10      In or around November 2007, the relationship between the two

11  men soured due to Tomasi's alleged abandonment of Denoce in

12  criminal cases where Tomasi was his attorney of record.  Stanley

13  G. Hilton, Esq.,[4] a San Francisco attorney, was then appointed

14  trustee of the Trust in place of Tomasi.

15      In December 2008, Denoce, individually, and the Trust filed a

16  first amended complaint against Tomasi in state court alleging

17  multiple causes of action, including various probate code

18  violations, breach of fiduciary duty (under which plaintiffs

19  alleged six separate counts) and a demand for an accounting.[5]

20      Tomasi demurred to the first amended complaint.  On

21  February 5, 2009, the state court issued a minute order

22  tentatively sustaining the demurrer without leave to amend certain

23  causes of action, including the ninth — the breach of fiduciary

24

25      [4] Stanley G. Hilton, Esq., California bar no. 65990, was
subsequently disbarred in June 2012.

26

27      [5] Denoce's individual claims against Tomasi, which included
claims for breach of an employment agreement and professional
malpractice, were apparently resolved by jury trial in Tomasi's
28  favor in April 2010.  These claims are not at issue.

-4-

1    duty claims (count nos. 2-6).  The state court set another hearing

2    for March 5, 2009, to finalize its ruling on Tomasi's demurrers.

3         On February 28, 2009, while the state court's final ruling on

4    the demurrers was pending, the Trust moved for summary judgment on

5    its claims in the first amended complaint, including the ninth

6    cause of action for breach of fiduciary duty, counts 2-6 ("First

7    MSJ").

8         On March 5, 2009, the state court adopted its February 5,

9    2009 tentative ruling as the final ruling on Tomasi's demurrers.

10   Tomasi filed his answer to the first amended complaint on

11   April 20, 2009.

12        In his opposition to the First MSJ, filed on May 1, 2009,

13   Tomasi opposed summary judgment on the basis that the Trust failed

14   to support it with any admissible evidence, and on the basis that

15   triable issues of material fact existed as to all of the Trust's

16   claims, including the ninth cause of action and its separate

17   counts for breach of fiduciary duty and his failure to account.

18   Notably, Tomasi did not assert as a defense that the ninth cause

19   of action was stricken on his prior demurrer in March 2009.

20        On May 22, 2009, the Trust re-filed its summary judgment

21   motion on the first amended complaint with the required evidence

22   ("Re-filed MSJ").  In support, the Trust offered Tomasi's

23   discovery responses.[6]  At his deposition, Tomasi had stated:

24        Q. Didn't you appear on behalf of the Trust as attorney
          for the Savannah N. DeNoce Trust?
25

26   ───────────────
          [6] Tomasi failed to include any of the documents filed in the
     Re-filed MSJ in the record.  Nonetheless, the following portions
27   of his discovery answers were quoted by the Trust in its response
     brief to the California Court of Appeal, which the Trust has
28   provided in its excerpts of the record.

                                 -5-

1    A. I think I did at some point, yeah.

2    Q. There's more than just acting as Trustee. You
actually appeared as attorney of record for the Trust
3    in some cases, didn't you?

4    A. Yeah, I think I did.

5    Q. You went to law school. What's your understanding
of being a Trustee? Tell me your understanding.
6
    A. It's been a long time since I was in law school.
7
    Q. You know what, why don't you just tell me what your
8    understanding of being a Trustee is now?

9    A. I really can't give you a definition for that.

10    Q. Don't have any idea? Is it a fiduciary relation?

11    A. Probably, yeah.

12    Q. So you had fiduciary duties to the trust maybe?

13    A. Apparently so ....

14    A. That's a tough question to answer. I do remember
from law school that to be a Trustee, a Trustee would
15    hold property for the benefit of another. I do
remember that much. I think you can't waste the corpus
16    of the Trust. I do remember that much. Excuse me.
Those are the big ones.
17

18  In his written requests for admission, Tomasi stated:

19    RFA #1: You were Trustee of The Savannah N. DeNoce
Trust.
20
    Answer: Admit.
21
    RFA #4: You did not obtain a Certificate of Independent
22    review, pursuant to Probate Code § 21351 regarding your
transfer of Savannah N. DeNoce real property to
23    yourself individually.

24    Answer: Admit.

25    RFA #5: While you were Trustee of the Savannah N.
DeNoce Trust you encumbered the trust real property by
26    using it as collateral for a loan.

27    Answer: Admit.

28    RFA #8: You used The Savannah N. DeNoce Trust real

1  property to finance the sale of your Porsche 911
   Carerra to the Plaintiff.

2  Answer:  Admit.

3  RFA #10: Demand was made on behalf of Plaintiff prior
4  to filing this action that you return the Savannah N.
   DeNoce real property by quit claiming it back to the
5  trust.

6  Answer:  Admit.

7  RFA #11: You have not returned the Trust real property
   you quit claimed to yourself.

8  Answer:  Admit.

9  RFA #12: The Savannah N. DeNoce Trust real property
10  continues to remain in your name individually.

11  Answer:  Admit.

12  RFA #13: Demand was made on behalf of Plaintiff prior
   to filing this action that you remove the encumbrance
13  you caused to be placed against Savannah N. DeNoce
   Trust property.

14  Answer:  Admit.

15  RFA #14: The encumbrance you caused to be placed
16  against The Savannah N. DeNoce real property remains.

17  Answer:  Admit.

18  When questioned at his deposition regarding the whereabouts of the

19  loan proceeds Tomasi had obtained against the Simi Valley

20  Property, he replied:

21  Q. That would still leave another $8,000 unaccounted
   for.  There was $33,000 to borrower.

22  A. So?

23  Q. Where did the other $8,000 go?

24  A: Who cares?

25

26  On June 9, 2009, while the Re-filed MSJ for the first amended

27  complaint was pending, a second amended complaint was filed, but

28  the allegations concerning the Trust were not changed.  Tomasi

-7-

1  moved to strike the second amended complaint on the ground that it

2  included the previously dismissed ninth cause of action for breach

3  of fiduciary duty.

4      On July 16, 2009, Tomasi filed an ex parte application under

5  CAL. CODE CIV. PROC. § 437c(h), the equivalent to Civil Rule 56(d),

6  to continue the hearing on the Re-filed MSJ based on the Trust's

7  failure to produce evidence on the existence of an express trust.

8      On July 22, 2009, he raised for the first time an argument

9  based on the state court's ruling granting his demurrer to the

10  ninth cause of action without leave to amend.  In each place where

11  he was to respond to a statement of material fact, Tomasi wrote in

12  "ninth cause of action stricken.  I don't have to respond."

13      On August 11, 2009, the state court entered a minute order

14  tentatively granting the Re-filed MSJ in its entirety, subject to

15  further evidence from the parties on damages.  Immediately

16  following the August 11 hearing, counsel for the Trust served

17  Tomasi's counsel with a copy of the Trust documents, which had

18  been previously ordered filed under seal.  Tomasi's counsel had

19  declined when first given the opportunity to review the Trust

20  documents in May 2009.

21      In light of the state court's ruling on the Re-filed MSJ,

22  Tomasi filed a motion for relief from default or judgment on

23  August 17, 2009.  Tomasi sought leave to oppose the Re-filed MSJ

24  on the ninth cause of action for breach of fiduciary duty.  He

25  contended that the court's ruling granting the Re-filed MSJ

26  contradicted its prior minute orders from February and March 2009

27  dismissing that claim.  The Trust opposed Tomasi's motion.

28      After receiving the parties' further briefing on the issue of

-8-

Case 1:12-14001   Document 3622   Filed 08/15/2013   Page 9 of 29      (10 of 31)

1  damages, the state court entered its ruling on the Re-filed MSJ on

2  September 18, 2009.  It determined that the Trust had met its

3  burden on all five counts of the ninth cause of action for breach

4  of fiduciary duty (counts 2-6), as well as its claims for quiet

5  title and for an accounting.  The state court found that, based on

6  Tomasi's answers to discovery, he was liable for slander of title

7  because the Simi Valley Property belonged to the Trust, and that

8  Tomasi had breached his fiduciary duties to the Trust when he

9  intentionally transferred the property to himself for his own gain

10  and for the purpose of selling and financing the sale of his own

11  car for profit.[7]  Specifically, the state court found that Tomasi

12  had breached (1) CAL. PROBATE CODE § 16002[8] because the transaction

13  was not in the best interest of the beneficiary of the Trust, it

14  was in Tomasi's best interest, (2) CAL. PROBATE CODE § 16004[9] by

15  _____

16      [7] In its ruling, the state court found:

17      Defendant's responses to requests for admission and other
   discovery admit all of the evidentiary facts necessary to

18  support these causes of action [citation omitted].  His
   attempt to contradict his discovery responses in a new

19  declaration cannot defeat a summary judgment [citation
   omitted].

20    . . . .
   Defendant was well aware of his fiduciary duties to the Trust

21  and its beneficiary.  Defendant verified, both in his
   discovery responses, and in his deposition, that he was the

22  Trustee of Trust, as well as the Trust attorney.  Most of
   what has previously been admitted by Defendant is now

23  disputed in his declaration, which the court disregards to
   the extent it contradicts prior discovery responses [citation

24  omitted].

25      [8] CAL. PROBATE CODE § 16002(a) provides that a "trustee has a
   duty to administer the trust solely in the interest of the

26  beneficiaries."

27      [9] CAL. PROBATE CODE § 16004 provides in relevant part:

28                    (continued...)

1   using trust property for his own profit — to sell his own car, and

2   (3) Cal. Probate Code § 16040[10] for failure to administer the Trust

3   with care.  Finally, the state court found that Tomasi had

4   breached Cal. Probate Code § 21350[11] by the improper transfer of the

5   Trust res to himself and Cal. Probate Code § 859[12] by a wrongful

6

7

8   [9](...continued)
  (a) The trustee has a duty not to use or deal with trust

9   property for the trustee's own profit or for any other
  purpose unconnected with the trust, nor to take part in any

10   transaction in which the trustee has an interest adverse to
  the beneficiary.

11   [10] Cal. Probate Code § 16040 provides in relevant part:

12   (a) The trustee shall administer the trust with reasonable
  care, skill, and caution under the circumstances then

13   prevailing that a prudent person acting in a like capacity
  would use in the conduct of an enterprise of like character

14   and with like aims to accomplish the purposes of the trust as
  determined from the trust instrument.

15

16   [11] Cal. Probate Code § 21350 provides in relevant part:

17   (a) Except as provided in Section 21351, no provision, or
  provisions, of any instrument shall be valid to make any

18   donative transfer to any of the following:
  . . . .

19       (4) Any person who has a fiduciary relationship with the
      transferor, including, but not limited to, a conservator

20       or trustee, who transcribes the instrument or causes it
      to be transcribed.

21   [12] Cal. Probate Code § 859 provides:

22   If a court finds that a person has in bad faith wrongfully
  taken, concealed, or disposed of property belonging to the

23   estate of a decedent, conservatee, minor, or trust, or has
  taken, concealed, or disposed of the property by the use of

24   undue influence in bad faith or through the commission of
  elder or dependent adult financial abuse, as defined in

25   Section 15610.30 of the Welfare and Institutions Code, the
  person shall be liable for twice the value of the property

26   recovered by an action under this part. The remedy provided
  in this section shall be in addition to any other remedies

27   available in law to a trustee, guardian or conservator, or
  personal representative or other successor in interest of a

28   decedent.

1   taking of Trust property.  Based on the evidence submitted, the
2   state court determined that the Trust was also entitled to an
3   accounting.  In its discussion on damages, the state court found,
4   "from the totality of the evidence, including Mr. Tomasi's
5   response at his deposition regarding where the proceeds of the
6   loan went, 'Who cares,' to constitute bad faith for the purposes
7   of the claims of slander of title and appropriate Probate Code
8   violations which require such a finding."

9       Also on September 18, 2009, the state court entered its
10  ruling denying Tomasi's motion for relief from default or
11  judgment.  Tomasi did not provide a copy of his motion or of this
12  ruling in the record, but the state court did comment on why it
13  denied relief in its ruling on the Re-filed MSJ.  First, Tomasi
14  had failed to show what facts might exist to support yet another
15  opposition to the Re-filed MSJ.  Second, the allegations asserted
16  by the Trust were the same in both the first and second amended
17  complaints.  Finally, although the February 5 minute order
18  indicated that the court had sustained the demurrer without leave
19  to amend with respect to the ninth cause of action in the first
20  amended complaint, the state court believed the February 5
21  transcript made clear that it had intended sustaining the demurrer
22  only with respect to <u>Denoce's</u> cause of action for breach of
23  fiduciary duty, not the Trust's.  The state court further noted
24  that Tomasi's first opposition, filed in May 2009, failed to raise
25  as a defense that the demurrers to the breach of fiduciary duty
26  causes of action against the Trust, which had been decided in
27  February and March 2009, were sustained without leave.

28      A judgment consistent with the state court's ruling on the

1  Re-filed MSJ was entered on October 29, 2009 ("State Court

2  Judgment").  The Trust was awarded $318,000 in damages for

3  Tomasi's wrongful taking of Trust property (which he was ordered

4  to return) and return of the profit he made from the sale of the

5  Porsche, plus $160,000 in attorney's fees (reduced from the

6  approximately $220,000 requested by the Trust), for a total

7  judgment of $478,000.  The court further awarded the Trust costs

8  upon submission of a Memorandum of Costs.

9      Tomasi's subsequent motions for reconsideration, writ of

10 mandate, writ of supersedeas and his motion for a new trial were

11 denied.  He appealed the State Court Judgment on December 23,

12 2009.

13 **B.   Postpetition events**

14     **1.   Appeal of the State Court Judgment and the Trust's
           motion for summary judgment**

15

16     Tomasi and his wife filed a chapter 7 bankruptcy case on

17 May 23, 2010.  The Trust filed a timely complaint against Tomasi

18 seeking a determination that the State Court Judgment was excepted

19 from discharge under § 523(a)(2) and/or (a)(4) and to deny Tomasi

20 (and his wife) a discharge under § 727(a)(2), (a)(3), (a)(4) and

21 (a)(5).[13]  Tomasi's answer denied all of the Trust's allegations

22 and noted that the State Court Judgment was on appeal.

23     On February 4, 2011, the Trust moved for summary judgment on

24 its § 523 claims (the "§ 523 MSJ").  Tomasi opposed the § 523 MSJ,

25 contending that the Trust was not entitled to summary judgment

26 because the State Court Judgment did not satisfy the elements of

27 _____

28     [13] The § 727 claims were later dismissed and are not part of
   this appeal.

-12-

1   issue preclusion: the issues were not identical, the issues in the

2   prior proceeding were not actually litigated or necessarily

3   decided, and the decision in the prior proceeding was not final as

4   Tomasi's appeal remained pending.

5       On February 15, 2011, Tomasi moved for relief from stay to

6   pursue his appeal of the State Court Judgment with the California

7   Court of Appeal.  Relief was granted, and appellate briefing

8   ensued.[14]

9       On October 27, 2011, the California Court of Appeal issued

10  its decision affirming the State Court Judgment.  Regarding

11  Tomasi's liability for breach of fiduciary duty to the Trust, the

12  appellate court upheld the state court's ruling, reiterating that

13  the undisputed evidenced showed:  the Trust owned the Simi Valley

14  Property; Tomasi, as trustee, quitclaimed the property to himself;

15  Tomasi refused to return the property to the Trust; Tomasi

16  encumbered trust property for his own personal gain; Tomasi

17  profited from the sale of the Porsche; Tomasi paid his personal

18  credit card debts with proceeds from a loan on the Simi Valley

19  _____

20     [14] While Tomasi's appeal to the California Court of Appeal was
    pending, the Trust sued Tomasi (and two alleged transferees) in
21  state court for fraudulent transfer.  Several months prior to
    entry of the State Court Judgment, but during his litigation with
22  the Trust and Denoce, Tomasi had executed grant deeds conveying
    his interest in certain properties to his brother and
23  father-in-law.  Just after the state court had entered its ruling
    on the Re-filed MSJ on September 18, 2009, but before it had
24  entered the State Court Judgment on October 29, 2009, Tomasi
    recorded the grant deeds on September 29 in an apparent attempt to
25  make himself "judgment proof."  The Trust recorded its abstract of
    judgment on November 9, 2009.  After filing bankruptcy, Tomasi's
26  brother and father-in-law executed grant deeds in June 2010
    transferring back to Tomasi his interest in the properties.
27     On July 11, 2011, the state court found Tomasi liable for the
    fraudulent transfers.  Absent the automatic stay, the state court
28  determined that the Trust was entitled to a judgment of
    approximately $45,000.

1  Property; the Trust had demanded an accounting and Tomasi had
2  refused to provide one.  The appellate court agreed that Tomasi's
3  evidence offered in opposition to the Re-filed MSJ was merely, and
4  improperly, offered to defeat his prior contradictory discovery
5  admissions.  Tomasi's subsequent petitions for rehearing and
6  review before the California Supreme Court were denied.

7       **2.   Ruling on the § 523 MSJ**

8       With the State Court Judgment now final, proceedings on the
9  § 523 MSJ resumed.  Tomasi apparently filed a further opposition
10 to the § 523 MSJ, but did not include it in the record.  In its
11 reply to Tomasi's opposition to the § 523 MSJ, the Trust rejected
12 Tomasi's contention that the State Court Judgment was a "default
13 judgment."  To the contrary, Tomasi had filed two oppositions to
14 the Trust's motion, a motion for reconsideration, a motion for a
15 new trial, a writ of mandate, a writ of supersedeas, an appeal of
16 the State Court Judgment, a petition for rehearing of that appeal,
17 and, when it was denied, Tomasi filed a petition for review with
18 the California Supreme Court, which also was denied.  Furthermore,
19 the issue of whether it was a "default judgment" was fully
20 litigated before the court of appeal and rejected.  Nonetheless,
21 argued the Trust, even if it were a true default judgment, in
22 California a default judgment satisfies the "actually litigated"
23 prong for the application of issue preclusion.  The Trust
24 contended that all other requirements for issue preclusion were
25 also met — the defalcation issue was identical, it was necessarily
26 decided in the prior proceeding, the State Court Judgment was
27 final and on the merits, and the defendant party was the same.
28      The bankruptcy court held a hearing on the § 523 MSJ on

-14-

1  April 18, 2012. Counsel for Tomasi contended that summary
2  judgment under § 523(a)(4) was precluded because the state court
3  and court of appeal never reviewed a copy of the Trust and never
4  made a finding that an express trust existed. The court asked
5  counsel why it would be revisiting this factual issue when Tomasi
6  had taken the State Court Judgment all the way up to the
7  California Supreme Court and had, presumably, raised this issue.
8  Tomasi's counsel replied that he had raised the issue, but, due to
9  the voluminous record, he believed the court of appeal never got a
10  "handle on the record." Counsel equated the State Court Judgment
11  to a default judgment that deprived Tomasi of due process. In his
12  opinion, the state court had entered judgment in favor of the
13  Trust based on his lack of opposition to the ninth cause of action
14  in his opposition to the Re-filed MSJ, which he admitted was a
15  tactical decision done in reliance on the February and March 2009
16  minute orders sustaining Tomasi's demurrer to that cause of action
17  without leave to amend. After hearing further argument from the
18  parties, the bankruptcy court decided to allow further briefing on
19  the matter and continued it to May 30, 2012. The matter was again
20  continued to July 2012.

21      The Trust filed a response to Tomasi's sur-reply,[15] as well as
22  a copy of the Trust under seal. The Trust argued that an express
23  trust did exist, as evidenced by the document. It disputed
24  Tomasi's contention that alleged outstanding tax liens against
25  Denoce invalidated the Trust, an argument the state court had

26
_____

27      [15] Tomasi apparently filed a sur-reply and a further sur-reply
   in opposition to the § 523 MSJ on April 11 and May 2, 2012, but he
28  did not include these in the record.

-15-

1  considered and rejected.  The Trust also disputed Tomasi's
2  newly-raised argument about the "odd" procedural posture of the
3  Re-filed MSJ, whereby the state court conducted a second hearing
4  on damages.  The Trust argued that the procedure was not
5  prejudicial and, in fact, Tomasi had requested the separate
6  damages hearing.  The Trust further disputed Tomasi's contention
7  that actual fraud must be found for a claim under § 523(a)(4); a
8  defalcation was sufficient.  Finally, the Trust disputed Tomasi's
9  contention that the equities weighed in his favor.  The Trust was
10  essentially broke after being forced into years of litigation to
11  get back the Simi Valley Property and to be made whole for
12  Tomasi's defalcation.[16]

13      Tomasi filed another sur-reply, contending that the Trust was
14  a scam by Denoce to avoid federal and state tax liens, and that
15  fraud in a fiduciary capacity had not been actually litigated and
16  necessarily decided by the state court.

17      On July 10, 2012, the bankruptcy court entered a memorandum
18  decision granting the § 523 MSJ on the Trust's § 523(a)(4) claim
19  for Tomasi's defalcation.[17]  Determining that the elements of issue
20  preclusion had been met, the court ruled that the Trust was
21  entitled to summary judgment on the State Court Judgment.

22      The bankruptcy court entered an order granting the § 523 MSJ
23  on July 20, 2012.  Prior to a judgment being entered, Tomasi filed

24

25      [16] Due to expenses associated with the litigation, the Trust
26  asserts that it had to sell the Simi Valley Property to pay
    attorney's fees, and it has had to heavily mortgage the Westlake
    Property to pay for the additional attorney fees on appeal.
27

28      [17] The bankruptcy court denied the Trust's § 523(a)(2) claim
    for fraud.  The Trust has not appealed this ruling.

-16-

1  a timely motion for reconsideration of the court's order granting

2  the § 523 MSJ.  It was denied for "cause" on July 30, 2012.

3  Tomasi's premature notice of appeal was deemed timely once the

4  bankruptcy court entered a judgment in accordance with its order

5  and memorandum decision granting the § 523 MSJ on August 30, 2012.

6  Rule 8002(a).

7                          **II. JURISDICTION**

8          The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334

9  and 157(b)(2)(I) and (J).  Initially, Tomasi's appeal of the

10  Judgment was premature as the Trust's § 727 claims had not yet

11  been resolved by judgment.  However, by way of an order entered on

12  October 24, 2012, those remaining claims were dismissed.

13  Therefore, the Judgment is now final, and we have jurisdiction

14  under 28 U.S.C. § 158.  See Anderson v. Allstate Ins. Co.,

15  630 F.2d 677, 680 (9th Cir. 1980)(notice of appeal from an order

16  disposing of fewer than all claims against all parties that is not

17  certified under Civil Rule 54(b) may be rendered effective by

18  subsequent events such as final disposition of the remaining

19  claims); Wolkowitz v. FDIC (In re Imperial Credit Indus., Inc.),

20  527 F.3d 959, 971 n.12 (9th Cir. 2008)(citing Anderson).

21                          **III. ISSUE**

22          In granting summary judgment to the Trust on its § 523(a)(4)

23  claim, did the bankruptcy court err in determining that issue

24  preclusion was available, or abuse its discretion in applying

25  issue preclusion to the State Court Judgment?

26                      **IV. STANDARDS OF REVIEW**

27          We review de novo the preclusive effect of a judgment;

28  whether issue preclusion is available is a mixed question of law

                              -17-

1 | and fact in which the legal questions predominate. The Alary
2 | Corp. v. Sims (In re Associated Vintage Grp., Inc.), 283 B.R. 549,
3 | 554 (9th Cir. BAP 2002); Stephens v. Bigelow (In re Bigelow),
4 | 271 B.R. 178, 183 (9th Cir. BAP 2001). If issue preclusion is
5 | available, the bankruptcy court's decision to apply it is reviewed
6 | for abuse of discretion. Lopez v. Emergency Serv. Restoration,
7 | Inc. (In re Lopez), 367 B.R. 99, 104 (9th Cir. BAP 2007). A
8 | bankruptcy court abuses its discretion if it applied the wrong
9 | legal standard or its findings were illogical, implausible or
10 | without support in the record. TrafficSchool.com, Inc. v.
11 | Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).
12 |     We review the bankruptcy court's decision to grant a motion
13 | for summary judgment de novo. Sigma Micro Corp. v.
14 | Healthcentral.com (In re Healthcentral.com), 504 F.3d 775, 783
15 | (9th Cir. 2007). Our de novo review is governed by the same
16 | standard used by the bankruptcy court under Civil Rule 56(c). See
17 | Suzuki Motor Corp. v. Consumers Union of U.S., Inc., 330 F.3d
18 | 1110, 1131 (9th Cir. 2003). Summary judgment should be granted
19 | "if the pleadings, depositions, answers to interrogatories, and
20 | admissions on file, together with the affidavits, if any, show
21 | that there is no genuine issue as to any material fact and that
22 | the moving party is entitled to a judgment as a matter of law."
23 | Civil Rule 56(c) (incorporated by Rule 7056); Gertsch v. Johnson &
24 | Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 165 (9th Cir.
25 | BAP 1999).
26 |     Whether a person is a fiduciary for purposes of § 523(a)(4)
27 | is a question of federal law we review de novo. Ragsdale v.
28 | Haller, 780 F.2d 794, 795 (9th Cir. 1986); Lovell v. Stanifer

-18-

1  (In re Stanifer), 236 B.R. 709, 713 (9th Cir. BAP 1999).  Although

2  de novo review is appropriate, the issue of the existence of a

3  fiduciary relationship is a mixed question of fact and law.  A

4  mixed question of fact and law arises because the determination of

5  whether a fiduciary relationship exists requires that we look to

6  whether an express or technical trust was created under state law,

7  which requires an evaluation of the facts.  See Lewis v. Scott

8  (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996).

9                          **V. DISCUSSION**

10      Tomasi attempts to raise several issues on appeal, some of

11  which are not properly before us.  We consider only the issues of

12  whether the bankruptcy court properly applied issue preclusion to

13  the State Court Judgment and whether the Trust was entitled to

14  summary judgment determining that the State Court Judgment was

15  excepted from discharge for defalcation under § 523(a)(4).

16  **A.   The bankruptcy court did not err in determining that issue
        preclusion was available or abuse its discretion in applying
17      issue preclusion to the State Court Judgment.**

18      Preclusion principles apply in discharge exception

19  proceedings under § 523(a) to preclude relitigation of state court

20  findings relevant to the dischargeability determination.  Grogan

21  v. Garner, 498 U.S. 279, 284 n.11 (1991).  Further, 28 U.S.C.

22  § 1738 requires us, as a matter of full faith and credit, to apply

23  the relevant state's preclusion principles.  Gayden v. Nourbakhsh

24  (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995).  Here, we

25  apply the issue preclusion principles of California, the state

26  from which the State Court Judgment originated.  Cal-Micro, Inc.

27  v. Cantrell (In re Cantrell), 329 F.3d 1119, 1123 (9th Cir. 2003).

28      Under California law, issue preclusion bars relitigation of

                              -19-

1  an issue if: (1) the issue sought to be precluded is identical to
2  that decided in the prior proceeding; (2) the issue was actually
3  litigated in the prior proceeding; (3) the issue was necessarily
4  decided in the prior proceeding; (4) the judgment in the prior
5  proceeding is final and on the merits; and (5) the party against
6  whom preclusion is sought is the same, or in privity with, the
7  party to the prior proceeding. Harmon v. Kobrin, (In re Harmon),
8  250 F.3d 1240, 1245 (9th Cir. 2001)(citing Lucido v. Sup. Ct.,
9  51 Cal.3d 335, 341 (Cal. 1990)).

10      Without question, the parties involved in the adversary
11  proceeding are the same as those involved in the prior proceedings
12  before the state and appellate courts. Further, it is undisputed
13  that the State Court Judgment became final after being denied
14  review by the California Supreme Court. Contrary to Tomasi's
15  contention, which we discuss more thoroughly below, the rulings by
16  the state court and the California Court of Appeal demonstrate
17  that this case was decided on the merits. Therefore, the fourth
18  and fifth criteria for application of issue preclusion are
19  satisfied. Accordingly, we review only the first three.

20      **1.   The issue sought to be precluded from relitigation is
            identical to that decided in the prior proceeding.**
21

22      "The 'identical issue' requirement addresses whether
23  'identical factual allegations' are at stake in the two
24  proceedings, not whether the ultimate issues or dispositions are
25  the same." Lucido, 51 Cal.3d at 342. The issues at stake in the
26  state court proceedings and in the adversary proceeding were the
27  same:  whether Tomasi was a fiduciary, and, if so, whether he
28  breached his fiduciary duty to the Trust causing it damages.

-20-

1  Tomasi does not appear to dispute this.  His argument focuses more

2  on whether these issues were actually litigated and necessarily

3  decided in the prior proceedings.  Therefore, we conclude, as did

4  the bankruptcy court, the first criterion for application of issue

5  preclusion is satisfied.

6      **2.    The elements required to establish fraud or defalcation**
          **in a fiduciary capacity were actually litigated in the**
7          **prior proceeding.**

8      Section 523(a)(4) excepts from discharge any debt "for fraud

9  or defalcation while acting in a fiduciary capacity . . . ."  A

10 creditor seeking relief under § 523(a)(4) must establish three

11 elements:  (1) an express trust existed; (2) the debt was caused

12 by fraud or defalcation; and (3) the debtor was a fiduciary to the

13 creditor at the time the debt was created.  <u>Nahman v. Jacks</u>,

14 266 B.R. 728, 735 (9th Cir. BAP 2001)(citing <u>Otto v. Niles</u>

15 <u>(In re Niles)</u>, 106 F.3d 1456, 1459 (9th Cir. 1997)).  The term

16 "fiduciary" is construed narrowly for purposes of § 523(a)(4).  It

17 does not include all relationships of trust and confidence;

18 rather, the fiduciary relationship must arise from an express or

19 technical trust, which is determined by state law.

20 <u>In re Cantrell</u>, 329 F.3d at 1125.

21     "[A]n issue is 'actually litigated' when it is properly

22 raised by a party's pleadings or otherwise, when it is submitted

23 to the court for determination, and when the court actually

24 determines the issue."  <u>In re Harmon</u>, 250 F.3d at 1247 (citing

25 <u>People v. Sims</u>, 32 Cal.3d 468 (Cal. 1982)).  However, even if the

26 state court did not make any express findings, it has been held in

27 our circuit that "[a]s a conceptual matter, if an issue was

28 necessarily decided in a prior proceeding, it was actually

-21-

1 | litigated." _Id._ at 1248.

2 |         **a.   An express trust existed.**

3 |     In California "[t]he five elements required to create an

4 | express trust are (1) a competent trustor, (2) trust intent,

5 | (3) trust property, (4) trust purpose, and (5) a beneficiary."

6 | _Keitel v. Heubel_, 103 Cal.App.4th 324, 337 (2002)(citation

7 | omitted).

8 |     Tomasi contends that the bankruptcy court erred in

9 | determining that the issue of whether an express trust existed was

10 | precluded because the state and appellate courts had not made this

11 | finding.  Specifically, argues Tomasi, the Trust had failed to

12 | plead the terms of the Trust as required in the prior action, the

13 | written terms of the Trust were not in evidence in the prior

14 | action, and the state court and court of appeal had not read or

15 | considered the Trust.  Notably, Tomasi failed to include in the

16 | record a majority of the underlying documents that would perhaps

17 | support his argument.  Nonetheless, we reject it.

18 |     First, Tomasi admitted in his discovery responses that he was

19 | the trustee of the Trust.  It is also undisputed that Denoce was a

20 | competent trustor, that the Simi Valley Property was part of the

21 | Trust res, that the Trust's purpose was to benefit Denoce's

22 | daughter, and that she was the beneficiary.  Moreover, the written

23 | terms of the Trust were subject to consideration as the document

24 | had been filed under seal in the state court and court of appeal.

25 | In its ruling, the state court acknowledged the existence of the

26 | Trust filed under seal.  These facts alone establish the existence

27 | of an express trust.  Further, the state court could not have

28 | found that Tomasi breached his fiduciary duties to the Trust

1  without implicitly or necessarily deciding that an express trust

2  existed to which he owed such duties.  Hence, the existence of an

3  express trust was actually litigated.[18]  In re Harmon, 250 F.3d at

4  1248.

5        **b.**  **The debt was caused by fraud or defalcation, and**

            **the debtor was a fiduciary to the creditor at the**

6              **time the debt was created.**

7      Until recently, innocent acts of failing to fully account for

8  money received in trust would be held as nondischargeable

9  defalcations; no intent was required.  Blyler v. Hemmeter

10  (In re Hemmeter), 242 F.3d 1186, 1190 (9th Cir. 2001)(citations

11  omitted); see also Oney v. Weinberg (In re Weinberg), 410 B.R. 19,

12  28 (9th Cir. BAP 2009).  In other words, a creditor had to

13  establish only that trust assets had gone missing and that the

14  debtor had failed to account for them or was responsible for their

15  loss.  See In re Hemmeter, 242 F.3d at 1191.

16      However, while this appeal was pending, the United States

17  Supreme Court issued Bullock v. BankChampaign, N.A., 133 S.Ct.

18  1754 (2013), on May 13, 2013, which established a heightened

19  mental state for defalcation under § 523(a)(4) and has changed

20

21

22

---

23      [18] Tomasi contends that because of various tax liens pending
against Denoce the Trust is invalid.  This issue has already been
24  raised before the state trial court and court of appeal and was,
apparently, rejected.  Therefore, it is not properly before us.
25  Even if we could review this issue, Tomasi raised it only in his
statement of issues presented on appeal; he has not provided any
26  argument in support in his opening brief.  As a result, this issue
has been abandoned and is not subject to review.  City of
27  Emeryville v. Robinson, 621 F.3d 1251, 1261 (9th Cir. 2010)
(appellate court "will not review issues which are not argued
28  specifically and distinctly in a party's opening brief.").

-23-

1   Ninth Circuit law.[19]  In Bullock, the Supreme Court determined that
2   where the conduct at issue does not involve bad faith, moral
3   turpitude, or other immoral conduct, the term "defalcation"
4   requires an "intentional wrong." Id. at 1759.  This includes a
5   knowingly wrongful act, or a grossly reckless act, by the debtor
6   in a fiduciary capacity.  Id.  Where actual knowledge of
7   wrongdoing is lacking, a fiduciary who "'consciously disregards'
8   (or is willfully blind to) 'a substantial and unjustifiable risk'
9   that his conduct will turn out to violate a fiduciary duty"
10  satisfies the statute.  Id. (citation omitted).

11       Based upon Tomasi's discovery responses, the state court
12  found that Tomasi became the trustee of the Trust in 2004.  It was
13  after this point that Tomasi engaged in activities the state court
14  found were detrimental to the Trust.  Accordingly, as § 523(a)(4)
15  requires, Tomasi's fiduciary relationship to the Trust arose from
16  "an express or technical trust" without reference to "the
17  wrongdoing that caused the debt." Honkanen v. Hopper
18  (In re Honkanen), 446 B.R. 373, 379 (9th Cir. BAP 2011).

19       As for whether the debt was caused by defalcation, the Trust
20  had alleged that Tomasi breached his fiduciary duties by
21  (1) transferring the Simi Valley Property to himself in fee simple
22  and continuing to hold title to it, (2) by wrongfully encumbering
23  trust property for his own profit, and (3) by failing to account
24  for the loan proceeds from the encumbrance he wrongfully placed on
25  the Simi Valley Property.  The state court ruled, and the court of

26  _____

27       [19] At oral argument, we invited the parties to provide
    supplemental briefing on Bullock addressing its potential effect,
28  if any, on this case.  Both parties filed the optional briefs.

1  appeal affirmed, that Tomasi's conduct had violated CAL. PROBATE
2  CODE §§ 16002, 16004, 16040, 21350 and 859.  Most importantly, the
3  state court found that Tomasi's self-dealing conduct had
4  constituted "bad faith" for purposes of the Trust's claims for
5  slander of title and the appropriate Probate Code violations
6  requiring such a finding.  The state court specifically found that
7  Tomasi had violated CAL. PROBATE CODE § 859, which inherently
8  requires a bad faith finding.  Thus, under <u>Bullock</u>, Tomasi's "bad
9  faith" conduct satisfies § 523(a)(4) and the inquiry could stop
10 here.  Nonetheless, the state court further found that Tomasi knew
11 of his fiduciary duties to the Trust, yet he "intentionally" and
12 "wrongfully" transferred the Simi Valley Property to himself for
13 his own benefit in violation of those duties, and he refused to
14 return the property or account for any missing funds, thereby
15 damaging the Trust.  Accordingly, Tomasi's conduct, as found by
16 the state court, clearly satisfies even the new standard for
17 defalcation under <u>Bullock</u>.  Remand to the bankruptcy court will
18 not be required.

19     The bankruptcy court also determined that Tomasi's failure to
20 object to the Re-filed MSJ in state court did not preclude the
21 application of issue preclusion to the State Court Judgment.
22 Tomasi contends that the bankruptcy court erred because the state
23 court's grant of summary adjudication to the Trust on its claims
24 for breach of fiduciary were the result of a default.[20]  The court

25

26     [20] To the extent Tomasi argues that the state court denied him
   due process by refusing to allow him to present evidence in
27 opposition to the Re-filed MSJ, the California Court of Appeal has
   already considered and rejected this argument.  That ruling is now
28                                                     (continued...)

-25-

1  of appeal has already considered and rejected Tomasi's "default"

2  argument.  Further, the State Court Judgment was far from a

3  default judgment.  Tomasi filed two oppositions to the Trust's

4  motions, a motion for reconsideration, a motion for a new trial, a

5  writ of mandate, a writ of supersedeas and an appeal of the State

6  Court Judgment.  When it was affirmed by the California Court of

7  Appeal, he filed a petition for rehearing, and when that was

8  denied, he filed a petition for review with the California Supreme

9  Court.  Tomasi has had many bites at this apple.

10       We agree with the bankruptcy court that the issue of Tomasi's

11  defalcation was actually litigated in the prior proceeding.

12  Accordingly, the second criterion for application of issue

13  preclusion is satisfied.[21]

14       **3.   The elements required to establish fraud or defalcation
             in a fiduciary capacity were necessarily decided in the
15           prior proceeding.**

16       Here, Tomasi asserts his same "default" argument, which he

17  claims precluded the application of issue preclusion to the State

18  Court Judgment.  The bankruptcy court determined that the facts

19  required to prove Tomasi had engaged in defalcation by a fiduciary

20  had been necessarily decided in the state court proceedings.

21       The state court considered the facts of this case and decided

22

23       [20](...continued)
    final.  Any due process arguments with respect to the state court
24  proceedings are not properly before us.

25       [21] Tomasi also argues that because his "alleged fraud" was
    determined upon default, no finding of actual fraud by the state
26  court exists to which issue preclusion could apply under
    § 523(a)(4).  Fraud was never at issue in this case.  In any
27  event, a defalcation by a fiduciary, which was expressly found in
    the prior proceedings, suffices to except a debt from discharge
28  under § 523(a)(4).  In re Hemmeter, 242 F.3d at 1190.

-26-

1  the issues relating to Tomasi's breach of fiduciary duty by
2  entering the State Court Judgment in the Trust's favor.
3  Specifically, it found that Tomasi had breached his fiduciary duty
4  by wrongfully taking trust property, engaging in self-dealing with
5  trust property for his own profit, and failing to provide a full
6  accounting.  His conduct violated multiple sections of the CAL.
7  PROBATE CODE.  The Trust was awarded damages based on these
8  violations.  These findings of breach of fiduciary duty under
9  various sections of the CAL. PROBATE CODE, which clearly amount to a
10 defalcation for purposes of § 523(a)(4), were "necessary" to
11 support the State Court Judgment.  Moreover, as discussed above,
12 the issue of whether an express trust existed was also necessarily
13 decided in that the state court could not have found Tomasi liable
14 for breach of his fiduciary duties without necessarily deciding
15 that an express trust existed to which he owed a fiduciary duty.

16     Accordingly, the third criterion for application of issue
17 preclusion is satisfied.

18     **4.    Public policy does not preclude the application of issue
         preclusion to the State Court Judgment.**
19

20     If all of the threshold requirements are met, as they are
21 here, the court then must decide whether application of issue
22 preclusion would "further the policy interests underlying the
23 doctrine."  In re Harmon, 250 F.3d at 1249, n.11 (citing Lucido,
24 51 Cal.3d at 342-43).  The California Supreme Court has identified
25 three such policy interests: "'preservation of the integrity of
26 the judicial system, promotion of judicial economy, and protection
27 of litigants from harassment by vexatious litigation.'"  Baldwin
28 v. Kilpatrick (In re Baldwin), 249 F.3d 912, 919-20 (9th Cir.

-27-

1   2001)(quoting Lucido, 51 Cal.3d at 343).

2       Tomasi argues only that no evidence was submitted in the
3   prior state court proceedings to support the creation or existence
4   of a valid express trust.  Not only is this factually incorrect,
5   we already have concluded to the contrary.

6       The bankruptcy court explained in great detail why none of
7   these policy interests were present in this case.  In short, it
8   concluded that application of issue preclusion to the State Court
9   Judgment promoted judicial economy and conserved judicial
10  resources, because it would not have to hold a trial to determine
11  issues that had already been decided by the state court and
12  confirmed on appeal.  In addition, applying issue preclusion
13  protected the Trust from vexatious litigation because Tomasi was
14  represented by counsel and had a full and fair opportunity to
15  litigate these issues in the state court proceedings; the Trust
16  should not be required to relitigate before the bankruptcy court
17  what was properly decided in the state court and confirmed on
18  appeal.

19      Despite Tomasi's lack of argument here, we agree with the
20  bankruptcy court that none of these policy interests preclude the
21  application of issue preclusion to the State Court Judgment.

22                      **VI. CONCLUSION**

23      The state court's findings established that an express trust
24  existed, that Tomasi's defalcation caused a debt to the Trust, and
25  that he was acting in a fiduciary capacity at the time the debt
26  was created.  Accordingly, because no genuine issue of material
27  fact existed, the bankruptcy court did not err when it granted
28  summary judgment to the Trust on its § 523(a)(4) claim for relief.

-28-

1    We AFFIRM.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-29-

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re: FLORENCE TOMASI; WILLIAM TOMASI

Debtors

BAP No. CC-12-1401-KiTaD

------------------------------

FLORENCE TOMASI; WILLIAM TOMASI

Appellants

v.

SAVANNAH N. DENICE TRUST

Appellee

Bankr. No. 10-16174-MT
Adv. No. 10-1446-MT
Chapter 7

September 6, 2013

## PROOF OF SERVICE OF MANDATE

A certified copy of the attached judgment was sent to:

CLERK

U.S. BANKRUPTCY COURT

BkCt, San Fernando
U.S. Bankruptcy Court
Warner Center
21041 Burbank Boulevard
Woodland Hills, CA 91367-6609

on September 6, 2013
By: Patti Ippolito, Deputy Clerk